NOT FOR PUBLICATION [1]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOMECOMINGS FINANCIAL NETWORK, INC., | : | Civil Action No. 07-cv-1414 (FLW) |
| Petitioner and Claim Respondent, | : | OPINION |
| v. | : |  |
| MARK KOTYK, | : |  |
| Respondent and Arbitration Claimant. | : |  |

**WOLFSON, United States District Judge**

Presently, before the Court is a motion by Homecomings Financial Networks, Inc. ("Homecomings") to vacate an arbitration award pursuant to 9 U.S.C.A. § 10 of the Federal Arbitration Act ("FAA"). The underlying arbitration involved a loan held by Homecomings upon which Respondent, Mark Kotyk ("Kotyk"), had defaulted. The Arbitrator entered an award in favor of Mark Kotyk. The Court has considered the moving papers, there being no opposition thereto, and, for the reasons that follow, Petitioner's motion is granted[1].

---

[1] Importantly, the Court notes that although Kotyk has not filed any response to the instant motion, he is not pro se and there is counsel of record in this matter.

**I. BACKGROUND**

Kotyk entered into a loan agreement with FGC Commercial Mortgage Finance on July 18, 2000. The original amount of the loan was $60, 200. The loan was secured by a mortgage on Kotyk's real property located at 105 Raritan Avenue in Keansburg, New Jersey. The original loan contract contained an arbitration clause which compelled both parties to arbitrate, should any dispute arise. Subsequently, the loan was assigned to Homecomings on February 1, 2001. In March 2001, Kotyk defaulted on the loan payment and, after continuing defaults, a foreclosure proceeding was filed against Kotyk's property in Keansburg, New Jersey. After Kotyk failed to respond to the foreclosure complaint, a judgment in Homecoming's favor was entered in the amount of $65,506.48 on January 13, 2003. On January 21, 2003, before the property could be sold, Kotyk filed for bankruptcy pursuant to 11 U.S.C. § 1322(b)(5) in the United States Bankruptcy Court for the District of New Jersey.

Shortly after the commencement of his bankruptcy case, Kotyk began repaying the loan obligation and also requested a payoff statement from Homecomings. On August 30, 2004, Homecomings sent Kotyk a payoff letter which stated that Kotyk owed $78,684.12. Kotyk then paid the amount dictated in the payoff letter. Subsequently, Kotyk claimed that he overpaid, but without explanation. On March 31, 2005, Kotyk filed a complaint in the New Jersey Superior Court, Monmouth County Law Division, seeking to recover the amount he asserted he overpaid, plus other fees. On June 17, 2005, Homecomings filed a motion to dismiss Kotyk's complaint and, simultaneously, to compel arbitration pursuant to the FAA and the arbitration clause agreed to in the original loan contract. The New Jersey Superior Court granted Homecoming's motion on July 8, 2005, and dismissed the case.

In or around August 2006, Kotyk submitted a claim to the AAA seeking relief. Homecomings responded to Kotyk's complaint on September 22, 2006. Kotyk insisted that the payoff should have been calculated according to the amount of the foreclosure judgment against him along with interest and other limited costs. Homecomings, on the other hand, argued that the payoff amount should be calculated according to the terms dictated in the loan contract and that Kotyk owed a total of $78, 684.12. On February 5, 2007, the Arbitrator, Glenn S. Gray ("Gray"), issued a one page award in Kotyk's favor providing that Kotyk was entitled to $10,994.02 for loan overpayments, $1,341.87 for interest, and $5,000.00 for attorney's fees for a total of $17,335.89. Gray's award did not include any explanation or reasoning, nor did he state any legal basis for his determination. Homecomings now moves to vacate this award and Kotyk has not opposed the motion or otherwise responded to the Petition.

## II. DISCUSSION

Section 10 of the FAA provides several grounds pursuant to which a court may vacate an arbitration award. 9 U.S.C.A. § 10(a)(1)-(4). These situations include: "(1)where the award was procured by corruptiuon, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct... or of any other misbehavior by which the rights to any party have been prejudiced; or (4) where the arbitrators exceeded their powers..." Id. In addition, the Third Circuit has also recognized that a court may vacate an arbitration award "where the award is in manifest disregard of the law." Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1520 (3rd Cir. 1994). However, under the FAA "there is a strong presumption in favor of enforcing arbitration awards."

Brentwood Medical Assoc. v. United Mine Workers of America, 396 F.3d 237, 241 (3rd Cir. 2005).  Therefore, an arbitration award is presumed to be valid unless it is affirmatively shown otherwise." Id.  Thus, when a court reviews an award for manifest disregard of the law its role is:

> [N]ot to correct factual or legal errors made by an arbitrator. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misrepresents the parties' agreement.  When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, fact-finding does not provide a basis for a reviewing court to refuse to enforce the award."

The Major League Umpires Assoc. v. The American League of Professional Baseball Clubs, 357 F.3d 272, 279-80 (3rd Cir. 2004).  Indeed, "a court reviewing an arbitration award for manifest disregard of the law should not vacate the award unless it finds both that the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Millar, 274 F. Supp. 2d. 701, 706 (W.D. Pa. 2003)

In the instant matter, Homecomings asks this Court to vacate the underlying arbitration award because the award was issued in manifest disregard of the law.  Specifically, Homecomings contends that section 1322(b)(5) of the Bankruptcy Code governed the loan between Homecomings and Kotyk.  However, based on the award issued by the arbitrator in favor of Kotyk, Homecomings argues that the arbitrator could not have applied section 1322(b)(5) and thus, the arbitration award in favor of Kotyk should be vacated  The Court agrees.

To begin, section 1322(b)(5) of the Bankruptcy Code provides that a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5)

(2007). This section allows a chapter 13 debtor to cure defaults that have occurred prior to the filing of a bankruptcy petition, including, for example, where a mortgage holder has foreclosed on property. See In re Hussain, 250 B.R. 502, 510 (Bankr. D.N.J. 2000). If a debtor chooses to employ section 1322(b)'s "cure and maintenance" provision, the terms and provisions from the original mortgage contract remain in full force and effect; in other words, these provisions are reinstated and remain unchanged. Id.; see also in re Tavella, 191 B.R. 637, 641 (Bankr. E.D. Pa. 1996). Moreover, the Bankruptcy Code allows a debtor to cure a default under this provision until the residence in the underlying foreclosure action is sold at a foreclosure sale. 11 U.S.C. § 1322 (c)(1). Further, in order to determine the amount that a debtor must pay to cure default, a Court should look at "the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. §1322(e).

In the instant matter, Kotyk chose to cure his debt pursuant to section 1322(b)(5) of the Bankruptcy Code. Once Kotyk acted pursuant to §1322(b)(5), the terms of his original loan agreement were reinstated, see 11 U.S.C. §1322(e), and, accordingly, the payoff owed to Homecomings should have been computed according to the terms of the agreement. Thus, according to the terms of the mortgage, Kotyk would have owed Homecomings $78,684.12 and Homecomings would have owed nothing to Kotyk. Id. However, in the underlying matter, the Arbitrator held that Homecomings owed Kotyk $17,335.89 for overpayment, interest, and attorney's fees. Thus, the Arbitrator appears to have calculated the debt according to the foreclosure judgment issued against Kotyk rather than according to the terms of the loan contract. Indeed, the Court notes that if the arbitrator had applied the proper law and determined the calculation pursuant to the terms of the underlying loan agreement, the arbitration would have

5

concluded with a decision in Homecomings favor.

Homecomings made the law known to the Arbitrator, but it appears that the Arbitrator either refused to apply the Bankruptcy law or ignored the law in reaching his decision and the Arbitrator has not provided any explanation for the seeming deviation from the law.  Indeed, the Arbitrator's entire decision consists of a single sentence and a mathematical calculation of the amount awarded.  Thus, the Court has nothing before it to suggest that the Arbitrator did, in fact, apply the proper law, even if incorrectly.

Furthermore, Kotyk has not opposed the instant motion to vacate the underlying arbitration award.  Indeed, Homecomings' petition was filed on March 26, 2007.  Based on this filing date, Kotyk's opposition would have been due on April 23, 2007 and the motion would have been returnable on May 7, 2006.  However, Kotyk did not file anything in response to Homecomings' Petition.  Indeed, the Court, contacted Kotyk's counsel several times after the return date to inquire as to whether he planned to respond to the Petition.  The Court, however, received no response and on May 22, 2007,  I issued a letter to the parties explaining that based on Kotyk's lack of response, Homecomings' motion would be considered unopposed.   Significantly, as of August 22, 2007, Kotyk has not filed anything in this matter.

For all these reasons, despite the high standard necessary for a court to vacate an arbitration award, in a matter such as this, absent an explanation by the arbitrator or the respondent for the seemingly improper award, to deny the Petitioner's motion would amount to the imposition of an impossible burden on the Petitioner.  This is an example of the extreme case of an arbitrator exhibiting a manifest disregard of the law. Indeed, if this Court were to deny Homecomings' Motion based on the Arbitrator's clear disregard of the law and without including

any legal or factual explanation for the result, coupled with the respondent's silence, such an outcome would render judicial review of arbitration awards entirely toothless, and indeed nugatory.  Thus, based on the reasoning above, the Court will vacate the Arbitration Award.

### III. CONCLUSION

For the foregoing reasons,  Petitioner's Motion to Vacate the Arbitration Award is granted. An appropriate order will follow.

Dated: August 22, 2007

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge